UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATHE LOUISE COLTHARP,           ) | |
|                                                             ) | |
|           Plaintiff,                       ) | |
|                                                             ) | |
| v.                                                        ) | Case No.15-CV-0110-CVE-FHM |
|                                                             ) | |
| CAROLYN W. COLVIN,                  ) | |
| Acting Commissioner, Social            ) | |
| Security Administration,                   ) | |
|                                                             ) | |
|           Defendant.                   ) | |

**OPINION AND ORDER**

Before this Court is the report and recommendation (Dkt. # 19) of Magistrate Judge Frank H. McCarthy recommending that the Court affirm the decision of the Commissioner of the Social Security Administration denying plaintiff Social Security disability benefits. Plaintiff has filed an objection (Dkt. # 20) to the report and recommendation and seeks reversal of the Commissioner's decision, arguing that the Administrative Law Judge (ALJ) erred in his evaluation of plaintiff's multiple sclerosis (MS) and that the magistrate judge applied the wrong standard of review. Defendant responds that the magistrate judge's report and recommendation should be accepted because the ALJ committed no error in considering plaintiff's claim and the magistrate judge applied the correct standard of review. Dkt. # 21.

**I.**

On July 26, 2011, plaintiff protectively filed for Title II disability benefits. Dkt. # 11, at 22. Plaintiff's application stated that she suffered from various physical and psychological impairments that left her unable to work, including MS, attention deficit hyperactivity disorder (ADHD), herniated discs, and head and knee injuries sustained in a car accident. Id. at 175. Plaintiff's claims

were denied initially on January 9, 2012, and upon reconsideration on May 2, 2012. Id. at 22. Plaintiff requested a hearing before the ALJ and that hearing was held on August 6, 2013. Id.

Plaintiff appeared at the hearing and was represented by an attorney. Id. at 38. Plaintiff was 39 years old at the time of the hearing and lived in an apartment with her minor son. Id. at 43-45. Plaintiff stated that she had completed high school and some college. Id. at 48. She testified to a variety of physical and psychological complaints, including MS, post-traumatic stress disorder (PTSD) stemming from her involvement in a car accident, headaches and fatigue,. Id. at 53-54, 58. Plaintiff explained that her MS affected her balance and fine motor skills and made it difficult for her to walk without stumbling or to perform tasks with her hands. Id. at 54. She also stated that her MS caused painful muscle spasms in her back, shoulders, neck, and legs, and that stress exacerbated these symptoms. Id. at 56, 61. Plaintiff also explained that she had developed paranoia that strangers would notice that something was wrong with her. Id. at 54. Plaintiff testified that she spent most of the day lying down and was limited in the daily household chores she could perform. Id. at 56-57. Plaintiff testified that she took prescription muscle relaxers to alleviate the muscle spasms and that she was a patient at a methadone clinic. Id. at 61.

On September 16, 2013, the ALJ issued a written decision finding that plaintiff was not disabled. Id. at 31. The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Id. at 24. The ALJ found that plaintiff had severe impairments affecting her ability to work, including social phobia, personality disorder not otherwise specified, MS, and chronic pain syndrome. Id. The ALJ further found that these impairments or combination of impairments were not equivalent to one of those listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. Id. The ALJ formulated plaintiff's residual functional capacity (RFC), taking into account the

medical evidence and testimony. Id. at 26. The ALJ determined that the plaintiff could perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b), limited to simple, routine tasks and only occasional public contact. Id. The ALJ also determined that she should avoid unprotected heights, moving machinery, and other hazards. Id.

Considering plaintiff's RFC, the ALJ found that plaintiff was unable to perform any past relevant work as a title processor, customer service manager, retail store manager, and receptionist, but found that plaintiff could perform other occupations existing in significant numbers in the national economy. Id. at 29-30. These occupations included mail clerk, production inspector, circuit board assembler, and machine operator. Id. at 30. He concluded by stating that plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and finding that plaintiff was not disabled. Id.

On January 2, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's decision. Id. at 5. Plaintiff thereafter sought judicial review, arguing that the ALJ erred in evaluating plaintiff's MS and in his formulation of plaintiff's RFC. Dkt. # 12, at 4. The Court referred this case to the magistrate judge, who entered a report and recommendation recommending that the Court affirm the ALJ's decision. Dkt. # 19. Plaintiff has objected to the report and recommendation, asserting that the magistrate judge misapplied the standard of review and improperly concluded that the ALJ committed no error in evaluating plaintiff's MS. Dkt. # 20, at 1. Defendant responds that the magistrate judge correctly applied the standard of review and properly concluded that the ALJ committed no error in evaluating plaintiff's claims. Dkt. # 21, at 3-4.

**II.**

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. FED. R. CIV. P. 72(b).

**III.**

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five-step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id.* An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See id.* Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his

decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

The ALJ decided the case at step five of the analysis, concluding that plaintiff could perform other jobs existing in significant numbers in the national economy. Dkt. # 11, at 30. Having so decided, the ALJ found plaintiff not disabled and denied her claim for benefits. Id. at 31. The magistrate judge recommended that the ALJ's decision be affirmed, concluding that the ALJ properly evaluated plaintiff's claim. Dkt. # 19, at 8. In her objection, plaintiff contends that the magistrate judge misapplied the standard of review and that the magistrate judge erred in concluding that the ALJ properly assessed plaintiff's MS. Dkt. # 20, at 1. Defendant responds that the magistrate judge applied the correct standard of review and that the ALJ committed no error in denying plaintiff's claim. Dkt. # 21.

**A.**

Plaintiff first argues that the magistrate judge misapplied the standard of review in evaluating the ALJ's decision because, in his review, the magistrate judge is required to determine that the ALJ followed the correct legal standard. Dkt. # 20, at 2. Plaintiff asserts that the magistrate judge's report and recommendation did not address whether the ALJ applied the correct legal standard,

5

instead "skirting the issue" by concluding that plaintiff provided no authority or evidence that the ALJ did not apply the correct legal standard. Id. Defendant responds that the magistrate judge applied the correct standard of review, and argues that the magistrate judge expressly addressed plaintiff's argument that the ALJ was required to state the administrative standard of proof that he applied when reaching his decision. Dkt. # 21, at 1.

The magistrate judge, in responding to plaintiff's argument that the ALJ erred by not specifying the standard of proof in his decision, stated "Plaintiff has not cited to any authority requiring the inclusion of a statement of the standard of proof in an ALJ's decision. The regulations address the burden of proof. 20 C.F.R. §§ 404.920, 404.941(a), 404.948(a), 040.953(a). Plaintiff has not demonstrated this standard was not applied." Dkt. # 19, at 3 n.2. Plaintiff asserts that the magistrate judge's treatment of this issue was insufficient to assess whether the ALJ applied the correct legal standard in evaluating plaintiff's claim. Dkt. # 20, at 2.

In her objection, plaintiff for the first time identifies authority for her argument that an ALJ must specify the standard of proof in his decision; failure to do so constitutes reversible error. Id. at 3. In support of her argument, plaintiff cites two Tenth Circuit cases: Hamlin v. Barnhart, 365 F.3d 1208 (10th Cir. 2004), and Byron v. Heckler, 742 F.2d 1232 (10th Cir. 1984). In Hamlin, the Tenth Circuit stated that "[t]he agency's failure to apply correct legal standards, or show us it has done so, is also grounds for reversal." 135 F.3d at 1214. But Hamlin does not require an ALJ to include a specific recitation of the legal standard; rather it requires only that the reviewing Court be able to determine that the ALJ followed the correct legal standard. Similarly, in Byron, the Tenth Circuit explained that "the failure to apply the correct legal standard is, by itself, sufficient to command reversal in the case." 743 F.2d at 1235. Again, the Tenth Circuit acknowledged that a

6

reviewing Court must determine that the correct legal standard was applied, but does not mandate the inclusion of a specific recitation of that standard in an ALJ's decision.

Upon review of the ALJ's decision, the Court concludes that there is no evidence that the ALJ did not follow the correct legal standard, despite no specific recitation of that standard in the ALJ's decision. And, as the Tenth Circuit has explained, technical perfection is not required in an ALJ's decision. See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (explaining that common sense, not technical perfection guides a court's review of an ALJ's decision). The magistrate judge evaluated the ALJ's decision under the proper framework and correctly determined that the ALJ's decision was in accord with the correct legal standards, even in the absence of an explicit statement from the ALJ to that effect. The ALJ thus committed no error in his application of the legal standard to plaintiff's claims.

**B.**

Plaintiff next argues that the ALJ erred in assessing plaintiff's MS, arguing that the ALJ "did not understand the nature of [plaintiff's] medical condition, i.e., multiple sclerosis." Dkt. # 20, at 4-5. Plaintiff asserts that the ALJ's failure to understand plaintiff's condition resulted in improper evaluation of plaintiff's credibility and the limitations the impairment imposed because the ALJ "did not have an adequate understanding of the impairment to properly evaluate [plaintiff's] credibility and limitations, [] did not properly develop the evidence relating to her primary severe impairment to remedy the lack of understanding, and [] held his lack of understanding against [plaintiff]." Id. at 5. Plaintiff further argues that the magistrate judge failed to consider this argument that plaintiff raised in her opening brief, asserting that the magistrate judge incorrectly focused on the issue of a consultative exam. Id. Defendant responds that plaintiff's final allegation of error is nothing more

than an invitation for the Court to impermissibly reweigh the evidence to reach a result in plaintiff's favor. Dkt. # 21, at 3.

The ALJ's decision is replete with evidence that he understood the nature of plaintiff's medical condition and the resulting limitations. First, the ALJ stated that plaintiff's MS constituted a severe impairment, recognizing the serious nature of the condition. Dkt. # 11, at 24. The ALJ next considered the criteria for concluding that her impairment was equivalent to a listing, detailing the reasons that plaintiff's MS did not qualify. Id. at 25. The ALJ specifically compared the evidence about plaintiff's MS, including plaintiff's testimony and the objective medical evidence, with the necessary criteria. Id. The ALJ concluded that plaintiff's MS was not equivalent to a listing because it did not meet all of the criteria. Id.; see also Sulivan v. Zebley, 492 U.S. 521, 531 (explaining that an impairment that only manifests some criteria, no matter how severely, does not qualify as equivalent to a listing because it does not manifest all criteria).

The ALJ also accounted for the limitations plaintiff experienced due to her MS in his formulation of plaintiff's RFC. Id. at 26. The ALJ found that, considering all of plaintiff's symptoms and the extent to which they were consistent with the medical records, plaintiff could perform "less than the full range of light work" and was limited to "simple, routine tasks." Id. Plaintiff's allegations that the RFC does not include the proper limitations ignores that the ALJ included only those limitations that were based on the objective medical evidence and plaintiff's credible subjective complaints. The ALJ's decision reveals that the ALJ fully considered plaintiff's MS and the resulting limitations. The Court thus concludes that the ALJ's treatment of plaintiff's MS and the resulting conditions was not in error.

Plaintiff also asserts that the ALJ's misunderstanding of the disabling nature of her MS led the ALJ to err in his credibility determination. Dkt. # 20, "Credibility determinations are peculiarly the province of the finder of fact," and such determinations are not to be upset "when supported by substantial evidence." Diaz v. Sec'y of Health and Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). Nonetheless, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence." Hutson v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988). Factors an ALJ may weigh in determining a claimant's credibility include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Hutson, 838 F.2d at 1132. An ALJ must look beyond objective medical evidence in evaluating claims of disabling pain. Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987). An ALJ must give specific reasons for his findings and such findings must be closely linked to substantial evidence. Kepler v. Chater, 68 F.3d 387, 390 (10th Cir. 1995). However, an ALJ does not need to provide a "formalistic factor-by-factor review of the evidence"; an ALJ needs only to "set[] forth the specific evidence he relies on in evaluating the claimant's credibility." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Common sense should guide the review of an ALJ's credibility determination and technical perfection is not required. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166-67 (10th Cir. 2012).

The ALJ closely and affirmatively linked his credibility conclusions to substantial evidence. The ALJ specifically identified the objective medical evidence that conflicted with plaintiff's subjective complaints of disabling pain, including observations from examining physicians that

9

plaintiff could move with ease and conclusions from examining and treating physicians that plaintiff is capable of more movement than she testified. Dkt. # 11, at 28-29. The ALJ also explained the weight he afforded to the opinions of the treating or examining physicians, consultants, or other individuals, such as plaintiff's great aunt, in making his credibility determination. Dkt. # 11, at 28-29. The ALJ discussed the objective medical evidence in detail before concluding that "the limitations [plaintiff] gave herself appear exaggerated and are not supported by the medical records."

And, as to plaintiff's argument that the ALJ erred in assessing her credibility because the medical evidence clearly demonstrates plaintiff's MS diagnosis, the Court notes that a plaintiff's diagnosis is not the critical inquiry for an ALJ evaluating a plaintiff's claim; rather, the functional consequences of the condition dictate an ALJ's disability determination. Madrid v. Astrue, 243 F. App'x 387, 392 (10th Cir. 2007) (unpublished)[1] ("Our case law makes clear that a diagnosis of a condition does not establish disability. The question is whether a person's impairment significantly limits his ability to engage in substantial gainful activity."). Thus medical evidence in the record regarding plaintiff's diagnosis does not definitively determine the severity of her condition. See Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (explaining that a plaintiff's diagnosis of arthritis had no effect on the ALJ's determination regarding the severity of plaintiff's condition). Therefore, the ALJ's conclusion that plaintiff was not entirely credible as it related to her claims of disabling pain does not conflict with objective medical evidence regarding plaintiff's diagnosis. In sum, the ALJ's credibility determination is supported by substantial evidence. The ALJ thus did not err in his assessment of plaintiff's credibility.

---

[1] This and other unpublished decisions are not precedential, but they may be cited for their persuasive value. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

Finally, to the extent that plaintiff argues that the ALJ failed to properly develop the record, plaintiff simply renews the argument that the magistrate judge rejected. See Dkt. # 19, at 6. As the magistrate judge noted in concluding that the ALJ did not err in his development of the record, "the proper focus of a disability determination is on the demonstrated functional consequences of Plaintiff's conditions. Plaintiff has not demonstrated that the medical records were insufficient to assess her functional abilities." Id. The Court agrees with the magistrate judge's assessment. The ALJ focused on the functional consequences of plaintiff's impairment based upon medical records from plaintiff's treating physicians and plaintiff's hearing testimony. Plaintiff provides no support for her argument that the ALJ required additional medical records to assess the functional limitations resulting from her impairment, particularly as her argument relates to the necessity of medical evidence that generally describes MS, its predictable limitations, and a given medication's side effects. Based on the foregoing, the Court concludes that the ALJ did not err in assessing plaintiff's MS.

**IT IS THEREFORE ORDERED** that the Report and Recommendation (Dkt. # 19) is **accepted**. The Commissioner's decision to deny plaintiff's claim for disability benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 6th day of June, 2016.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE